UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TROFATTER,

   Plaintiff,

Case No. 1:08-cv-1018

Hon. Robert J. Jonker

v.

PATRICIA CARUSO, *et al.*,

   Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss filed by defendants Dr. Craig Hutchinson, Dr. Jason Kim and P.A. Thomas Lanore (docket no. 24) and a motion for summary judgment filed by defendants Patricia Caruso, Richard Russell, Julie Van Setters, Shirlee A. Harry, Helen Thompson, Michael Whalen, Mary Berghuis and Samuel Teed (docket no. 26).

**I.  Background**

Plaintiff has sued 40 defendants in their individual and official capacities. He identified the following 12 defendants: Michigan Department of Corrections (MDOC) Director Patricia Caruso; MDOC Bureau of Health Care Services (BHCS) Administrator Richard Russell; MDOC Region II AHA Julie Van Setters; MDOC Region II Dental Director Dr. Walter Ormes; Muskegon Correctional Facility (MCF) Warden Shirlee Harry; MCF Health Unit Manager (HUM) Michael Whalen; Correctional Medical Services, Inc. (CMS) Director Dr. Hutchinson; T. Lanore, P.A.; Jason Kim, M.D.; Muskegon Temporary Facility (MTF) HUM Helen Thompson; MTF

Warden Mary Berghuis; and MDOC Region II A/AHA Samuel Teed.[1] In addition, plaintiff's complaint has listed 28 unknown parties.[2]

Plaintiff sets forth the following allegations. Plaintiff arrived at the MDOC's Charles Egeler Reception and Guidance Center (RCG) on January 26, 2006. At that time, he informed health care personnel of a degenerative spinal condition, spinal pain, the need for surgical disc removal and diagnosis of Hepatitus C. This information was noted in his MDOC health care record. The health care provider offered no medical treatment. Plaintiff received a "very thorough" dental examination ten days later, which identified his missing teeth and noted the existence of periodontal disease.

On March 2, 2006, plaintiff was transferred to MCF. He was issued a special accommodation for a back brace on March 3, 2006, but never received it. From April 2006 through August 2006, plaintiff's requests for dental treatment were delayed and he received treatment only after submitting a grievance. Plaintiff also submitted a grievance for the "denial of timely and adequate health care" in August/September 2006.[3] Plaintiff saw defendant Dr. Kim on October 4, 2006, at which time he was given medical forms for submission to the Pain Committee and was given 14 nightly doses of pain medication. Plaintiff saw Dr. Kim on October 25th, at which time

---

[1] The court ordered service on the 12 identified defendants. The summons issued to Dr. Walter Ormes was returned unexecuted. *See* docket no. 8.

[2] Plaintiff lists unknown parties are listed as follows: "BHCS Board Members, Jane/John Does 1a thru 1f"; MDOC Medical Services Advisory Board Members Jane/John Does 2a thru 2 f"; "MDOC Chief Medical Officer, (CMO), Jane/John Doe 3"; MCF Dentist Jane/John Doe 4"; MCF Physician Assistant Jane/John Doe 9"; MDOC Chronic Care Committee Members, (CCCM), Jane/John Does 5a thru 5f"; "MCF [CMS] employees, Jane/John Does 6a thru 6f"; and MDOC Reception Guidance Center, (RGC), Doctor Jane/John Doe 7".

[3] The court notes that plaintiff filed grievances dated September 6 and 12, 2006. *See* discussion, § II.B., *infra*.

he submitted medical records from 2003 ( MRI, Myleogram and CT-scan reports) and the forms for the Pain Committee, including forms to enroll in the MDOC's Chronic Care Clinic.

Plaintiff suffered agonizing pain until March 5, 2007, when he received nightly doses of medication. On March 29, 2007, plaintiff became aware that he was prescribed pain medication to be taken three times per day. Sometime later, plaintiff saw Dr. Kim and inquired about having "disc removal surgery" (plaintiff had a disc impinging on a nerve root). Dr. Kim would not recommend the surgery. Plaintiff was informed that the prescription for one of his medications (Ultram[4]) would expire on May 5, 2007. Plaintiff received a refill after expressing his "Constitutional right to be free from cruel and unusual punishment." Sometime later, Dr. Kim advised plaintiff that the Pain Committee decision had been made, that pain management would continue, but surgery was not recommended. When plaintiff expressed his desire for surgery, Dr. Kim said he would not recommend it. Despite the degenerative nature of his spinal condition, medical service providers did not order an x-ray, MRI, CT scan or myleogram to inquire into degenerative changes in his spine. In mid-July 2007, plaintiff's Ultram dose was cut in half without explanation.

In late July 2007, plaintiff was transferred to MTF, where he submitted forms seeking pain management "to no avail." On August 16, 2007, plaintiff was transported to Brooks Correctional Facility for x-rays of his lumbar spine. An MTF nurse told plaintiff that more x-rays would be necessary, but no further x-rays were taken. About two weeks after the x-rays, MTF's medical service provider compared the x-rays with the 2003 x-rays revealed bone spurs and further advancement of the arthritis in his lower spine. Based on these results, plaintiff requested an

---

[4] Plaintiff sometimes refers to this medication as "Altram."

increase in pain medication from the Pain Committee. After learning the results of the x-ray, P.A. Lanore examined plaintiff and indicated that he would re-submit a request for appropriate pain management and possible surgery. One month later, while suffering daily chronic pain, plaintiff submitted a request inquiring as to the Pain Committee's response and a temporary Ultram prescription. Plaintiff was advised that the Pain Committee had not reached a decision and no temporary prescription issued. One month later, plaintiff again requested a temporary prescription, but this was denied. Plaintiff submitted an inmate grievance regarding inadequate health care.[5] The grievance was denied. As of February 22, 2008, plaintiff had not been advised as to the Pain Committee's decision.

Plaintiff alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff seeks injunctive relief (including oversight of his medical care) and monetary damages.

## II. Defendants' motion to dismiss

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

---

[5] The court notes that plaintiff filed a grievance dated October 12, 2007. *See* discussion, § II.B., *infra*.

Defendants Dr. Hutchinson, Dr. Kim and P.A. Lanore seek to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6) for failing to exhaust administrative remedies.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance

with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

Defendants have moved to dismiss this action for lack of exhaustion. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this

6

state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

Defendants have identified three grievances relevant to plaintiff's claims: MCF-06-09-0691-12a ("Grievance 691") dated September 6, 2006; MCF-06-09-0696-121 ("Grievance 696") dated September 12, 2006; and MTF-07-10-0670-12f1 ("Grievance 670") dated October 12, 2007. *See* docket no. 24-5. The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130. Two similar versions of PD 03.02.130 are applicable to plaintiff's grievances. The December 19, 2003 version of the policy directive is applicable to grievance nos. 691 and 696, which were filed in September 2006. The July 9, 2007 version of the policy directive is applicable to grievance no. 670, which was filed in October 2007.

Under Policy Directive 03.02.130, a prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides directions for

completing grievance forms. The two versions of the Policy Directive applicable to plaintiff's claims differ slightly. The December 19, 2003 version states:

> The issues shall be stated briefly. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

PD 03.02.130 at ¶ T(eff. Dec. 19, 2003) (emphasis in original).

The more recent version added the words "but concisely" to the first sentence quoted above:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

PD 03.02.130 at ¶ R (eff. July 9, 2007) (emphasis in original).

The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Prisoner Affairs Section (for grievances filed under the December 19, 2003 version) or the Grievance and Appeals Section (for grievances filed under the July 9, 2007 version).

Grievance 691 involved a claim against an unnamed dentist at MCF on August 2, 2006. Plaintiff stated that he had a treatment plan "for extractions and dentures," that he has endured pain and anguish, and questioned why he was on an examination waiting list when he had a treatment plan. Grievance 696 involved claims arising in May, June, July and August 2006.

9

Plaintiff stated that he had not received appropriate pain medication, a back brace and "needed surgical procedure." Plaintiff's grievance does not name any particular person, referring only to "MCF Health Services." Finally, Grievance 670 contained an incident date of October 9, 2007, and complained of plaintiff waiting on a decision from the Pain Committee. However, Grievance 670 is not directed an any particular person.

None of these grievances name defendants Dr. Hutchinson, Dr. Kim or P.A. Lanore as required by PD 03.02.130, and plaintiff does not identify any grievances naming these three defendants. Because plaintiff failed to name any of these three defendants in a grievance, he has failed to properly exhaust a grievance against them as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Accordingly, defendants Dr. Hutchinson, Dr. Kim and P.A. Lanore are entitled to dismissal for lack of exhaustion.

    **III.**    **Defendants motion for summary judgment**

    **A.**    **Legal Standard**

Defendants Director Caruso, BHSCA Russell, AHA Van Setters, HUM Thompson, HUM Whalen, Warden Harry, Warden Berghuis, and AHA Tweed have moved for summary judgment on the claims asserted against them. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Qualified immunity

Defendants contend that they are immune from suit. Qualified immunity from civil actions for damages is not a mere defense to liability, but rather absolute immunity from suit and an entitlement not to stand trial, which should be determined at the earliest possible stage in litigation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Government officials have qualified immunity from suit under § 1983 for damages arising out of the performance of their official duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Consequently, the doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Determining whether government officials are entitled to qualified immunity generally requires two inquiries: 1) whether, viewing the facts in the light most favorable to the plaintiff, the plaintiff has shown that

a constitutional violation occurred; and 2) whether the right was clearly established at the time of the violation." *Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009).

In this case, plaintiff alleges that defendants violated his Eighth Amendment rights by providing inadequate medical and dental care. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9. As one court observed, "[t]he Constitution decidedly does not require states to make prisons comfortable, and a prison sentence is not a voucher for free health care on demand." *Lee v. Beard*, No. 4:CV-03-1026, 2008 WL 744736 at *8 (M.D. Pa. March 18, 2008).

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

In this case, plaintiff has failed to establish that these defendants violated his constitutional rights. Plaintiff does not allege that any of them failed to provide him with medical or dental care. Rather, plaintiff alleged: that some of the defendants held supervisory positions and knew that the MDOC had a failing health care system (Director Caruso and BHCSA Russell); that some of the defendants denied grievances filed by plaintiff (Warden Harry, Warden Berghuis, AHA Tweed); and that some of the defendants held supervisory positions and performed unspecified acts and omissions that violated his Constitutional rights (Warden Harry, AHA Van Setters, HUM Whalen and HUM Thompson).[6] Compl. at ¶¶ 9, 32-34, 37-38, 41-43. Plaintiff's allegations do not state constitutional claims actionable under § 1983. Defendants have not provided any factual evidence in support of their motion. In his opposition to the motion for summary judgment, plaintiff submitted a copy of a physician's letter dated December 7, 2005 and copies of health care kites from 2006. *See* docket nos. 31-2 and 31-3. However, none of these documents reflect that these

---

[6] Plaintiff makes no specific allegation against HUM Thompson.

defendants were personally involved in plaintiff's medical treatment. Accordingly, the court will review defendants' motion based upon the pleadings.

Plaintiff has alleged that Director Caruso, BHSCA Russell, Warden Harry, AHA Van Setters, HUM Whalen and HUM Thompson, held in supervisory roles and failed to take action. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisor's liability "must lie upon more than a mere right to control employees and cannot rely on simple negligence." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). *See, e.g., Abston v. Shelby County Justice Center*, 19 Fed. Appx. 334 (6th Cir. 2001) (no respondeat liability for an Eighth Amendment claim of deliberate indifference brought under § 1983 against regional medical center that allegedly employed offending doctor). Accordingly, plaintiff does not allege any facts to support an Eighth Amendment claim against Director Caruso, BHSCA Russell, Warden Harry, AHA Van Setters, HUM Whalen and HUM Thompson.

Plaintiff's claims against Warden Harry, Warden Berghuis and AHA Tweed arise from their act of denying plaintiff's grievances. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional

14

dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care"). Plaintiff does not allege any facts to support an Eighth Amendment claim against defendants Warden Harry, Warden Berghuis and AHA Tweed.

Viewing the facts in the light most favorable to plaintiff, none of these individual defendants violated plaintiff's rights against cruel and unusual punishment because of their failure to supervise or because of their denial of grievances. The court concludes that defendants Caruso, Russell, Van Setters, Thompson, Whalen, Harry, Berghuis, and Tweed are entitled to prevail on their motion for summary judgment.

### C. Eleventh Amendment immunity

These same eight defendants seek Eleventh Amendment immunity for plaintiff's claims brought against them in their official capacities. The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." As an initial matter, plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities").

However, the Eleventh Amendment does not bar § 1983 claims for prospective injunctive relief against prison officials in their official capacities under the doctrine of *Ex parte*

15

*Young*, 209 U.S. 123, 155-56 (1908), which allows suits against state actors in their official capacities for injunctive relief. *See Gean v. Hattaway*, 330 F.3d 758, 766-67 (6th Cir. 2003). *See also*, *Will*, 491 U.S. at 73-74 (an action brought against a state official for prospective, injunctive relief under § 1983 is not treated as an action against the state).

Here, plaintiff seeks injunctive relief against defendants Caruso, Russell, Van Setters, Thompson, Whalen, Harry, Berghuis and Tweed, to remedy the alleged Eighth Amendment violations. *See* Compl. at ¶¶ A(1)-(5), B(1)-(2), G(1), H(1), K(1)-(2), L(1)-(2), R(1), S(1)-(2). Based upon the allegations contained in plaintiff's complaint, defendants contend that there has been no showing of a continuing violation of plaintiff's Eighth Amendment rights. The court agrees. Plaintiff alleged that he received a "very thorough dental examination" and follow-up dental treatment. Compl. at ¶¶ 3, 7-8. There is no allegation that plaintiff suffers from on-going dental needs that remain untreated. Plaintiff's complaints regarding inadequate medical care arise from his disagreement with the course of treatment: plaintiff wanted back surgery; plaintiff wanted additional medical tests; plaintiff was not satisfied with his pain medication; plaintiff was not satisfied with the length of time the Pain Management Committee took to make decisions; and plaintiff was not satisfied with the medical staff's recommended course of treatment and medications prescribed. *Id.* at ¶¶ 2, 4, 11, 16-17, 19-20, 22, 24, 26, 30, 32 and 34.

In ¶ 36 of the complaint, plaintiff sets forth his allegations of a continuing injury as follows: "[a]s of the writing of this Complaint, plaintiff is afforded a minimal amount of inadequate pain management which took plaintiff over one year to obtain . . . Daily mobility is always painful, late nights and early mornings are sleepless for the lack of a necessary surgery and adequate pain management." Plaintiff also alleged that as of February 22, 2008, he "has still not been afforded or

16

advised as to the Pain Committee's alleged decision or the alleged implemented decision." *Id.* at ¶ 35. The court does not view this allegation as a claim supporting an on-going medical treatment issue. While plaintiff alleged that he did not receive a decision from the Pain Committee "as of" February 22, 2008, there is no allegation that he was still awaiting a response from the Committee when he filed this action some eight months later on October 30, 2008.

Plaintiff's only request for prospective injunctive relief with respect to his own ongoing medical condition is directed to defendant Caruso:

> that defendant/Director, in her official capacity, order, by Director Memorandum, that plaintiff immediately seen by a independent Orthopedic Specialist/Surgeon after having diagnostic tests consisting of MRI, CT-scan, Myleogram and EMG involving plaintiff's entire spine as well as any surgical procedures recommended as a result of the before named diagnostic tests.

Compl. at ¶ A(3). Plaintiff's other requests for injunctive relief against these defendants relate to such matters as performing investigations into the MDOC health care system and preventing future constitutional violations relating to inmate health care. *See* Compl. at ¶¶ A(1)-(2), A(4), B(1)-(2), G(1), (H)(1), K(1)-(2), L(1)-(2), R(1) and S(1).

Viewing the pleadings in the light most favorable to plaintiff, the court concludes that plaintiff has neither alleged nor demonstrated an Eighth Amendment violation requiring prospective injunctive relief. Plaintiff's complaint is based upon his dissatisfaction and disagreement with the pain management medication and Dr. Kim's decision not to recommend back surgery. A prisoner's disagreement with a course of medical treatment does not state a federal constitutional claim. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Even if

17

plaintiff's medical treatment was deficient in some manner, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06.

Plaintiff's allegations are similar to those in *Estelle*, in which the Supreme Court pointed out that such claims involving treatment options and diagnostic testing, do not form the basis for an Eighth Amendment claim:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . .

*Id.* at 107. *See generally, Westlake v. Lucas*, 537 F.2d 857, 860 at n. 5 (6th Cir. 1976) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). Accordingly, defendants are entitled to Eleventh Amendment immunity.

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that motion to dismiss filed by defendants Dr. Craig Hutichinson, Dr. Jason Kim and P.A. Thomas Lanore (docket no. 24) and a motion for summary judgment filed by defendants Patricia Caruso, Richard Russell, Julie Van Setters, Shirlee A, Harry, Helen Thompson, Michael Whalen, Mary Berghuis and Samuel Teed (docket no. 26) be **GRANTED**.

Dated: January 19, 2010 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).