UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL TROFATTER,

    Plaintiff,

Case No. 1:08-cv-1018

Hon. Robert J. Jonker

v.

PATRICIA CARUSO, *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss filed by defendant Daniel Spitters, P.A. (docket no. 69).

### I.     Background

Plaintiff has sued 40 defendants in their individual and official capacities with respect to his medical treatment. On March 17, 2010, the court dismissed eleven defendants on various grounds, including the failure to exhaust administrative remedies. *See* Order Approving Report and Recommendation (docket no. 60). P.A. Spitters filed his answer on April 15, 2010 and has moved for dismissal of plaintiff's claims alleged against him.

The court previously summarized plaintiff's claims as follows:

> Plaintiff sets forth the following allegations. Plaintiff arrived at the MDOC's Charles Egeler Reception and Guidance Center (RCG) on January 26, 2006. At that time, he informed health care personnel of a degenerative spinal condition, spinal pain, the need for surgical disc removal and diagnosis of Hepatitus C. This information was noted in his MDOC health care record. The health care provider offered no medical treatment. Plaintiff received a "very thorough" dental examination ten days later, which identified his missing teeth and noted the existence of periodontal disease.

On March 2, 2006, plaintiff was transferred to MCF [Muskegon Correctional Facility]. He was issued a special accommodation for a back brace on March 3, 2006, but never received it. From April 2006 through August 2006, plaintiff's requests for dental treatment were delayed and he received treatment only after submitting a grievance. Plaintiff also submitted a grievance for the "denial of timely and adequate health care" in August/September 2006. Plaintiff saw defendant Dr. Kim on October 4, 2006, at which time he was given medical forms for submission to the Pain Committee and was given 14 nightly doses of pain medication. Plaintiff saw Dr. Kim on October 25th, at which time he submitted medical records from 2003 ( MRI, Myleogram and CT-scan reports) and the forms for the Pain Committee, including forms to enroll in the MDOC's Chronic Care Clinic.

Plaintiff suffered agonizing pain until March 5, 2007, when he received nightly doses of medication. On March 29, 2007, plaintiff became aware that he was prescribed pain medication to be taken three times per day. Sometime later, plaintiff saw Dr. Kim and inquired about having "disc removal surgery" (plaintiff had a disc impinging on a nerve root). Dr. Kim would not recommend the surgery. Plaintiff was informed that the prescription for one of his medications (Ultram) would expire on May 5, 2007. Plaintiff received a refill after expressing his "Constitutional right to be free from cruel and unusual punishment." Sometime later, Dr. Kim advised plaintiff that the Pain Committee decision had been made, that pain management would continue, but surgery was not recommended. When plaintiff expressed his desire for surgery, Dr. Kim said he would not recommend it. Despite the degenerative nature of his spinal condition, medical service providers did not order an x-ray, MRI, CT scan or myleogram to inquire into degenerative changes in his spine. In mid-July 2007, plaintiff's Ultram dose was cut in half without explanation.

In late July 2007, plaintiff was transferred to MTF [West Shoreline Correctional Facility], where he submitted forms seeking pain management "to no avail." On August 16, 2007, plaintiff was transported to Brooks Correctional Facility for x-rays of his lumbar spine. An MTF nurse told plaintiff that more x-rays would be necessary, but no further x-rays were taken. About two weeks after the x-rays, MTF's medical service provider compared the x-rays with the 2003 x-rays revealed bone spurs and further advancement of the arthritis in his lower spine. Based on these results, plaintiff requested an increase in pain medication from the Pain Committee. After learning the results of the x-ray, P.A. Lanore examined plaintiff and indicated that he would re-submit a request for appropriate pain management and possible surgery. One month later, while suffering daily chronic pain, plaintiff submitted a request inquiring as to the Pain Committee's response and a temporary Ultram prescription. Plaintiff was advised that the Pain Committee had not reached a decision and no temporary prescription issued. One month later, plaintiff again requested a temporary prescription, but this was denied. Plaintiff submitted an inmate grievance regarding inadequate health care. The grievance

[dated October 12, 2007] was denied. As of February 22, 2008, plaintiff had not been advised as to the Pain Committee's decision.

Plaintiff alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff seeks injunctive relief (including oversight of his medical care) and monetary damages.

Report and Recommendation at pp. 2-4 (footnotes omitted) (docket no. 51).

### II. P.A. Spitter's motion to dismiss

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendant seeks to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6) for failing to exhaust administrative remedies and failing to state a claim for relief.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its

well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

Defendant has moved to dismiss this action for lack of exhaustion. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("Like other Rule 12(b)(6) motions to dismiss, a

4

motion to dismiss on statute of limitations grounds should be granted when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief. A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing

the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

Defendant has identified three grievances relevant to plaintiff's claims: MCF-06-09-0691-12a ("Grievance 691") dated September 6, 2006; MCF-06-09-0696-121 ("Grievance 696") dated September 12, 2006; and MTF-07-10-0670-12f1 ("Grievance 670") dated October 12, 2007. *See* docket nos. 69-6, 69-7 and 69-8. The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130. Two similar versions of PD 03.02.130 are applicable to plaintiff's grievances. The December 19, 2003 version of the policy directive is applicable to grievance nos. 691 and 696, which were filed in September 2006. The July 9, 2007 version of the policy directive is applicable to grievance no. 670, which was filed in October 2007.

Under Policy Directive 03.02.130, a prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides directions for completing grievance forms. The two versions of the Policy Directive applicable to plaintiff's claims differ slightly. The December 19, 2003 version states:

> The issues shall be stated briefly. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

PD 03.02.130 at ¶ T(eff. Dec. 19, 2003) (emphasis in original).

The more recent version added the words "but concisely" to the first sentence quoted above:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why,

how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

PD 03.02.130 at ¶ R (eff. July 9, 2007) (emphasis in original).

The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Prisoner Affairs Section (for grievances filed under the December 19, 2003 version) or the Grievance and Appeals Section (for grievances filed under the July 9, 2007 version).

Grievance 691 involved a claim against an unnamed dentist at MCF on August 2, 2006. Plaintiff stated that he had a treatment plan "for extractions and dentures," that he has endured pain and anguish, and questioned why he was on an examination waiting list when he had a treatment plan. Grievance 696 involved claims arising in May, June, July and August 2006. Plaintiff stated that he had not received appropriate pain medication, a back brace and "needed surgical procedure." Plaintiff's grievance does not name any particular person, referring only to "MCF Health Services." Finally, Grievance 670 contained an incident date of October 9, 2007, and complained of plaintiff waiting on a decision from the Pain Committee. However, Grievance 670 is not directed an any particular person.

None of these grievances name P.A. Spitters as required by PD 03.02.130, and plaintiff does not identify any grievances naming this defendant. Because plaintiff failed to name P.A. Spitters in a grievance, he has failed to properly exhaust a grievance against him as required by the PLRA. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Sullivan v. Kasajaru*,

316 Fed. Appx. 469, 470 (6th Cir. 2009) (affirming dismissal for lack of exhaustion where prisoner failed follow requirements of Policy Directive 03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*). Accordingly, P.A. Spitters is entitled to dismissal for lack of exhaustion.[1]

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that P.A. Spitters' motion to dismiss (docket no. 69) be **GRANTED**.


Dated: December 20, 2010                /s/ Hugh W. Brenneman, Jr.
                                        HUGH W. BRENNEMAN, JR.
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[1] Because plaintiff has failed to exhaust his administrative remedies against defendant Spitters, it is unnecessary for the court to address defendant's alternative grounds for dismissal.